No. 20-1047C
(Senior Judge Wolski)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

OPEN TECHNOLOGY FUND,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S CROSS-MOTION FOR PARTIAL DISMISSAL

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

Karen Mayo
Maryellen Righi
Assistant General Counsels
USAGM

WILLIAM P. RAYEL
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
PO Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-0302
Fax: (202) 307-0972
E-mail: William.Rayel@usdoj.gov

October 29, 2020

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

ARGUMENT ....................................................................................................... 3

    I.    The Court Should Dismiss Count IV Because OTF Has Not
        Demonstrated That Its Claim Is In Connection With A
        Procurement Or Proposed Procurement.................................................. 3

        A.    OTF's Argument That It Has A Procurement Contract With
              USAGM Is Waived And Estopped ............................................ 3

        B.    The Principal Purpose Of The Relationship Between
              USAGM And OTF Is To Transfer A Thing Of Value To
              OTF To Support And Stimulate The Public Purpose Of
              Promoting Internet Freedom .................................................... 6

    II.    OTF Lacks Standing Because It Has Not Shown That It Is A
        Qualified Bidder For The "Procurement Contract" It Seeks ................. 8

    III.    OTF Has Not Made A Non-Frivolous Allegation That USAGM's
        Alleged In-sourcing Violated A Statute Or Regulation ....................... 11

    IV.    Count IV Fails To State A Claim Because OTF Has Not Identified
        Any Statutory Violation, And Budgeting Decisions Regarding
        How To Allocate Limited Appropriations Are Otherwise
        Committed To Agency Discretion By Law ........................................ 16

    V.    Count IV Fails To State A Claim Because OTF Complains About
        USAGM Performing Inherently Governmental Functions For
        Which USAGM May Not Contract .................................................... 16

CONCLUSION................................................................................................... 17

**Index to Appendix**

| Document | Def. Rep. App. Page |
|---|---|
| Order Granting Summary Judgment, *District of Columbia v. Open Technology Fund*, D.C. Superior Court No. 2020 CA 003185 B, dated October 14, 2020 | 1 |

## **TABLE OF AUTHORITIES**

**CASES**                                                                                 **PAGE(s)**

*Blue & Gold Fleet, LP v. United States,*
    492 F.3d 1308 (Fed. Cir. 2007) ............................................................... 5, 6

*Boeing Co. v. United States,*
    968 F.3d 1371 (Fed. Cir. 2020) ................................................................. 5

*CardSoft, (assignment for the Benefit of Creditors, LLC v. Verifone, Inc.,*
    807 F.3d 1346 (Fed. Cir. 2015) ................................................... 11, 15, 16

*CliniComp Int'l, Inc. v. United States,*
    904 F.3d 1353 (Fed. Cir. 2018) .............................................................. 9, 10

*CMS Contract Management Services v. Massachusetts Housing Finance Agency,*
    745 F.3d 1379 (Fed. Cir. 2014) ............................................................... 5, 7

*Dynamics Corp. of Am. v. United States,*
    389 F.2d 424 (Ct. Cl. 1968) ....................................................................... 4

*Electra-Med Corp. v. United States,*
    140 Fed. Cl. 94 (2018) ............................................................................. 16

*Frankel v. United States,*
    842 F.3d 1246 (Fed. Cir. 2016) ................................................................. 4

*Halverson v. Slater,*
    129 F.3d 180 (D.C. Cir. 1997) ................................................................. 14

*Home Savings of Am. v. United States,*
    399 F.3d 1341 (Fed. Cir. 2005) ............................................................... 14

*Hymas v. United States,*
    810 F.3d 1312 (Fed. Cir. 2016) ................................................................. 6

*Kellogg Brown & Root Services, Inc. v. United States,*
    117 Fed. Cl. 764 (2014) ............................................................................. 9

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) ..................................................................... 12, 13, 16

*Maintenance Eng'rs v. United States,*
    749 F.2d 724 (Fed. Cir. 1984) ................................................................... 4

*MG Altus Apache Co. v. United States,*
    111 Fed. Cl. 425 (2013) ........................................................................... 10

ii

*Myers Investigative & Sec. Servs., Inc. v. United States,*
   275 F.3d 1366 (Fed. Cir. 2002) ................................................................ 10

*Mythics, Inc.,*
   B-418785, 2020 CPD ¶ 295, 2020 WL 5425788 (Comp. Gen. 2020) ...................................... 16

*Philadelphia Auth. for Indus. Dev. v. United States,*
   114 Fed. Cl. 519 (2014) .......................................................................... 11, 15, 16

*Ship Analytics, Inc.,*
   B-227084, 87-1 CPD ¶ 475, 1987 WL 102305 (Comp. Gen. 1987) ........................................ 6

*Torncello v. United States,*
   681 F.2d 756 (Ct. Cl. 1982) (*en banc*) .......................................................... 4

## STATUTES

22 U.S.C. § 6204 ..................................................................................... *passim*

31 U.S.C. § 1532 ......................................................................................... 13

31 U.S.C. § 1535 ..................................................................................... *passim*

31 U.S.C. § 3324(a) ...................................................................................... 8

31 U.S.C. § 6303 ...................................................................................... 4, 6

31 U.S.C. § 6304(1) ...................................................................................... 4

## REGULATIONS

FAR 9.104-1(a) ........................................................................................... 9

FAR 9.104-3(b) .......................................................................................... 10

FAR 17.502-2 ............................................................................................ 15

**MISCELLANEOUS**

Government Accountability Office,
   *Principles of Federal Appropriations Law*, Third Ed. (2008) ............................................ 12, 13

Government Accountability Office,
   *Principles of Federal Appropriations Law*, Fourth Ed. (2016) [1] .........................................12, 13

---

[1]  Both editions of *Principles of Federal Appropriations Law* are available at:
https://www.gao.gov/legal/appropriations-law-decisions/red-book.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| OPEN TECHNOLOGY FUND,                ) | |
|                                       ) | |
|           Plaintiff,                  ) | |
|                                       ) | |
|           v.                          )           No. 20-1047C |
|                                       )           (Senior Judge Wolski) |
| THE UNITED STATES,                    ) | |
|                                       ) | |
|           Defendant.                  ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE**
**TO DEFENDANT'S CROSS-MOTION FOR PARTIAL DISMISSAL**

Defendant, the United States, respectfully submits this reply in support of its request that the Court dismiss count IV of the complaint of plaintiff, Open Technology Fund (OTF).

**INTRODUCTION**

OTF's response to our motion to dismiss confirms that the purported bid protest count of OTF's complaint is a futile attempt to fit a square peg into a round hole to obtain injunctive relief that is unavailable under its breach of contract counts.

First, OTF continues to allege that its "Grant Agreement" with the United States Agency for Global Media (USAGM) is really a "procurement contract," notwithstanding that OTF has, until very recently, consistently referred to itself as a grantee and that it concedes that "the bulk of the funds provided under the contract's terms are intended not for 'USAGM's direct benefit,' but for a broader 'public purpose'—namely, the 'purpose of promoting Internet freedom.'" Pl. Resp. 3 (citation omitted).[1]

_____

[1] "Pl. Resp. __" refers to OTF's response to our motion to dismiss count IV of OTF's amended complaint, filed on October 22, 2020. "Def. Mot. __" refers to our motion to dismiss count IV, filed on October 15, 2020. "Def. App. __" refers to the appendix attached to our motion to dismiss count IV. "Def. Rep. App. __" refers to the appendix attached to this brief. "Pl. Mot. __" refers to OTF's motion for a preliminary injunction, filed on October 1, 2020.

Second, OTF asserts that it is a responsible source for a $20 million "procurement contract" administering USAGM's Internet-freedom programs, even though OTF: 1) does not dispute that it cannot perform the procurement contract it seeks without advance funding from USAGM, and it has not demonstrated the ability to obtain that advance funding; and 2) declined to address its specific failures to comply with a material term of its agreement that we identified in our motion to dismiss, instead simply asserting that the correspondence in the Court's record "speaks for itself." *Id.* at 5-6.

Third, OTF continues to implausibly assert that USAGM's alleged "in-sourcing" violated the Economy Act, even though OTF does not allege that USAGM entered into any Economy Act agreements to effect the alleged in-sourcing. As demonstrated in our motion, because the Economy Act is an authority that is inapplicable to the alleged in-sourcing, the remainder of count IV must also be dismissed because: 1) general allegations that USAGM in-sourced irrationally or in bad faith, untethered to a particular procurement statute or regulation, are outside this Court's bid protest jurisdiction; and 2) decisions regarding how to allocate appropriated funds are only reviewable to the extent Congress has expressly restricted the use of the funds. OTF does not respond to these contentions, effectively conceding them.

Fourth, OTF does not dispute that its "in-sourcing" protest seeks to prevent USAGM from awarding Government contracts, which is the antithesis of in-sourcing. OTF's allegations that USAGM is illegally in-sourcing by performing the inherently governmental functions of awarding and administering contracts fails to state a claim upon which relief can be granted.

---

"Pl. App. __" refers to the ECF page number of the declaration and exhibits attached to OTF's motion for a preliminary injunction.

2

Accordingly, the Court should dismiss count IV of OTF's complaint and end OTF's most recent attempt to interfere with the efforts of USAGM, OTF's sole benefactor, to promote Internet freedom.

## ARGUMENT

### I.      The Court Should Dismiss Count IV Because OTF Has Not Demonstrated That Its Claim Is In Connection With A Procurement Or Proposed Procurement

In its response, OTF continues to erroneously assert that this Court possesses jurisdiction to entertain its purported in-sourcing protest because the fiscal year (FY) 2020 "Grant Agreement" between OTF and USAGM is really a "procurement contract."  *See* Pl. Resp. 1-4. As we demonstrated in our motion: 1) OTF's argument is barred by the principles of waiver and estoppel; and 2) the grant agreement is not a procurement contract because the principal purpose of the relationship between USAGM and OTF is to transfer a thing of value (money) to OTF to support and stimulate the public purpose of promoting Internet freedom, not to acquire OTF's services for USAGM's direct benefit.  Def. Mot. 21-30.  In its response, OTF fails to demonstrate otherwise.

#### A.      OTF's Argument That It Has A Procurement Contract With USAGM Is Waived And Estopped

In our motion to dismiss, we demonstrated that principles of waiver and estoppel preclude OTF from now asserting that its FY 2020 grant agreement is actually a procurement contract.  *Id.* at 22-25.  As a program within Radio Free Asia (RFA), OTF submitted a "Grantee Proposal" to USAGM.  Def. App. 153.  USAGM then notified Congress of its intent "to provide funds to establish an independent non-profit *grantee* to implement the agency's Internet freedom programs."  *Id.* at 233 (emphasis added).  The FY 2020 agreement signed by OTF: 1) is plainly labeled a "Grant Agreement"; 2) "grants" OTF nearly $11 million, including up to $500,000 for

3

"One-time Startup Costs"; and 3) is subject to the laws governing grant agreements.  Pl. App. 39,
41, 49, 54, 70; Def. App. 526-28.  And, as recently as August 31, 2020, OTF stated in Federal
court that "OTF is a 'grantee'" whose grant "indirectly support[s] USAGM's mission[.]"  Def.
App. 589, 591.

Notwithstanding all of this, OTF erroneously argues that it has not waived its ability to
assert that its grant agreement is really a procurement contract because it "is not challenging the
validity of its contract with [USAGM] or complaining about a problem in the contract's terms—
including the contract's characterization as a grant agreement."  Pl. Resp. 2.  OTF is effectively
challenging the validity of its contract or at least complaining about its terms.

The agreement at issue is either a "grant agreement" or a "procurement contract," it
cannot be both.  *See Frankel v. United States*, 842 F.3d 1246, 1251 (Fed. Cir. 2016); 31 U.S.C.
§§ 6303(1), 6304(1).  Although OTF correctly asserts that a determination of the type of contract
is "not controlled by a label in the contract," Pl. Resp. 1 (quoting *Maintenance Eng'rs v. United
States*, 749 F.2d 724, 726 n.3 (Fed. Cir. 1984)), this determination is ordinarily controlled by the
intent of the parties, as demonstrated by the language of the contract and, if necessary, extrinsic
evidence.  *See, e.g.*, *Torncello v. United States*, 681 F.2d 756, 762 (Ct. Cl. 1982) (*en banc*) ("The
Navy wanted to have to deal with only one contractor and executed a [requirements] contract
that was intended to obligate that one contractor for all of the tasks needed."); *Dynamics Corp. of
Am. v. United States*, 389 F.2d 424, 429 (Ct. Cl. 1968) ("it is always true that 'in the case of
contracts, the avowed purpose and primary function of the court is the ascertainment of the
intention of the parties.'") (citation omitted).  As demonstrated above, it is indisputable that the
parties intended to enter into a "grant agreement."  Accordingly, OTF's argument that 31 U.S.C.
§ 6303 required USAGM and OTF to define their relationship through a procurement contract, is

really an attack on the validity of the agreement itself, or at least the terms of the agreement that would only apply to a grant, not a procurement contract. *E.g.*, Pl. App. 49 ("The Parties acknowledge and agree that that the Parties are subject to all Federal rules and regulations pertaining to grants").

OTF's reliance upon *Boeing Co. v. United States*, 968 F.3d 1371 (Fed. Cir. 2020), is misplaced. Pl. Resp. 2. In *Boeing*, the United States Court of Appeals for the Federal Circuit held that waiver did not bar the plaintiff's challenge to the validity of a regulation applicable to the contract at issue because challenging that regulation before contract award would have been futile, as the agency was required to apply the regulation regardless of the merits of the plaintiff's objection. 968 F.3d at 1378-80. Here, USAGM was not bound to illegally enter into a grant agreement with OTF if a procurement contract was required by law. OTF's assertion that an objection to the characterization of the agreement as a grant agreement "would have changed nothing" is baseless. Pl. Resp. 2.

OTF's reliance upon *CMS Contract Management Services v. Massachusetts Housing Finance Agency*, 745 F.3d 1379 (Fed. Cir. 2014), is similarly misplaced. Pl. Resp. 2. In *CMS*, the appellants were not contractors who had voluntarily entered into cooperative agreements; rather, they filed *pre-award* protests objecting to the solicitation's characterization of the resultant contracts as cooperative agreements, rather than procurement contracts. *See* 745 F.3d at 1380, 1384-85. If the appellants had waited until after the solicitation closed to protest, then they would have indeed waived their challenge to the solicitation's characterization of the resultant contracts as cooperative agreements. *See Blue & Gold Fleet, LP v. United States,* 492 F.3d 1308,

1313 (Fed. Cir. 2007); *Ship Analytics, Inc.*, B-227084, 87-1 CPD ¶ 475, 1987 WL 102305, at *2 (Comp. Gen. 1987).[2]

OTF also erroneously argues that estoppel is inapplicable because "OTF's acceptance of a contract titled 'grant agreement' was not 'misleading' because the nature of the contract is a legal question that the parties do not control[.]" Pl. Resp. 2-3. As demonstrated above, the legal question regarding the "nature of the contract" is ordinarily controlled by the intent of the parties. OTF's course of conduct, including submitting a "Grantee Proposal," Def. App. 153, and signing a "Grant Agreement," Pl. App. 39, 54, resulted in what USAGM plainly thought (and still thinks) is a "grant agreement," not a "procurement contract." As demonstrated in our motion and not rebutted by OTF, there is no reason to believe that USAGM would have provided more than $500,000 to fund OTF's formation if it knew that OTF would assert that it is a typical Government contractor, rather than a grantee. Def. Mot. 24-25.

**B.** **The Principal Purpose Of The Relationship Between USAGM And OTF Is To Transfer A Thing Of Value To OTF To Support And Stimulate The Public Purpose Of Promoting Internet Freedom**

As demonstrated in our motion, OTF has also failed to show that its FY 2020 grant agreement is a procurement contract because it has not shown that the "principal purpose" of the FY 2020 grant agreement is "to acquire . . . property or services for the direct benefit or use of the United States Government[.]" Def. Mot. 25-31 (quoting 31 U.S.C. § 6303(1)).

In response, OTF effectively concedes that "the bulk of the funds provided under the contract's terms are intended not for 'USAGM's direct benefit,' but for a broader 'public

_____

[2] *Hymas v. United States* is also unhelpful to OTF because the plaintiff was not awarded a cooperative agreement, it appears that there was no formal solicitation for the cooperative agreements at issue, and the Government did not raise the issue of *Blue & Gold* waiver. *See* 810 F.3d 1312, 1315-16 (Fed. Cir. 2016).

purpose'—namely, the 'purpose of promoting Internet freedom.'"  Pl. Resp. 3 (citation omitted).

But OTF erroneously argues that this is irrelevant because it is "just an 'intermediary' charged

with distributing the funds to third parties."  *Id.* (quoting *CMS*, 745 F.3d at 1384).  As

demonstrated in our motion, OTF is not an "intermediary," as that term is used in *CMS*, because

USAGM is not required to provide "assistance" to the people and entities that OTF funds, nor is

USAGM using OTF to provide a service to those people and entities.  Def. Mot. 28.  Rather,

USAGM is providing funding to assist *OTF* in *OTF's* mission of expanding Internet freedom by,

for example, supporting the development of Internet-firewall-circumvention technologies.  *See,*

*e.g.*, Pl. Mot. 25-27, 41, 70; Def. App. 179, 526.

Indeed, in a recent decision in *District of Columbia v. Open Technology Fund*, the

Superior Court of the District of Columbia found undisputed facts that "OTF was established for

the *public purpose* of facilitating access to circumvention and communications technologies to

journalists and audiences in countries where access to independent media is restricted" and that

"OTF receives funds through annual *grant agreements* from [USAGM] *to help fulfill its*

*mission*."  Def. Rep. App. 4 (emphasis added).  In contrast, in *CMS*, the contractors were "*not*

*receiving assistance from the federal agency* but [were] merely used to provide a service to

another entity which is eligible for assistance."  745 F.3d at 1386 (citation omitted) (emphasis

added).  That OTF has chosen to primarily enter into contracts to fulfill its mission, rather than

expand its own operations to develop Internet-freedom technologies, *see* Def. App. 529, does not

make OTF an "intermediary," as that term is used in *CMS*.

Also, unlike in *CMS*, where the Federal Circuit determined that the contractors had "no

rights to, or control over," the funds that were provided for housing assistance payments, 745

F.3d at 1386, OTF does have some "control over" the funds granted to it to support Internet-

freedom projects, such as its ability to choose contractors for Internet-freedom projects, subject to the terms of the grant agreement and USAGM's oversight.  *See* Pl. App. 39-73; Def. App. 526-29.  For example, OTF is only required to provide USAGM with advance notice of a new contract in limited circumstances, *e.g.*, where the contract exceeds $350,000 (or $200,000 for a lease).  *See* Pl. App. 47-48.

Because OTF has not demonstrated that its "Grant Agreement" with USAGM is really a procurement contract, this Court should dismiss count IV of OTF's complaint for lack of jurisdiction.

## II.     OTF Lacks Standing Because It Has Not Shown That It Is A Qualified Bidder For The "Procurement Contract" It Seeks

As demonstrated in our motion to dismiss, even if this Court determines that OTF has brought a procurement protest, then it should still dismiss count IV for lack of jurisdiction because OTF has not demonstrated that it has standing to bring the protest.  Def. Mot. 30-34. Specifically, OTF has not demonstrated that it is a responsible source for a procurement contract "administering [USAGM's] internet-freedom program and related grants," Am. Compl. 27, because it has not demonstrated that: 1) it has adequate financial resources to perform such a contract or the ability to obtain them; and 2) it has a satisfactory performance record.  Def. Mot. 31-34.

With regard to its financial resources, OTF does not deny that it cannot perform the contract it seeks without advance funding from USAGM, but erroneously argues that "there is no reason why OTF should need to do so[.]"  Pl. Resp. 5.  The default rule for procurement contracts is that "a payment under a contract to provide a service or deliver an article for the United States Government may not be more than the value of the service *already provided or the article already delivered*."  31 U.S.C. § 3324(a) (emphasis added).  If, as OTF alleges, USAGM

is truly acquiring services from OTF, rather than transferring a thing of value to OTF to carry out a public purpose, *see* Pl. Mot. 14-15, then the default rule is that OTF should perform the services before being paid.  Because it is undisputed that OTF does not presently have the financial resources to perform the contract it seeks, and OTF has not demonstrated that it has the ability to obtain those resources by advance funding from USAGM or otherwise, OTF has not demonstrated that it is a responsible contractor.  FAR 9.104-1(a); *cf. CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1360 (Fed. Cir. 2018) (rejecting the plaintiff's argument that it was responsible because it could subcontract some of the work required under the proposed contract, because the plaintiff "has not supplied any details regarding how, or with whom, it would subcontract to perform what is required under the proposed contract").

That OTF was provided advance funding during the course of its FY 2020 grant agreement is not relevant to OTF's standing.  Any bid protest by OTF must be based upon its status as an "actual or prospective bidder[] or offeror[]" for a contract, not its status as a current contractor.  *E.g.*, *Kellogg Brown & Root Services, Inc. v. United States*, 117 Fed. Cl. 764, 768-69 (2014) (citation omitted).  OTF has not demonstrated that USAGM would provide for advance funding in a future agreement with OTF, if the agreement was intentionally structured as a "procurement contract," rather than a grant agreement.

In our motion, we also demonstrated – by identifying specific deficiencies in OTF's responses to USAGM's requests for copies of OTF's contracts and for information relating to potential conflicts of interest – that OTF does not have a satisfactory performance record. Def. Mot. 33-34.  In response, OTF does not address these deficiencies; instead, OTF simply states that its correspondence with USAGM "speaks for itself."  Pl. Resp. 6.  OTF also falsely alleges, without citation, that USAGM has "repeatedly, over the course of ten years, awarded

OTF the precise contract that the agency now seeks to insource." *Id.* at 5.  Prior to September 2019, any grant agreements involving OTF's activities were with RFA, not OTF, as OTF was a program within RFA, not a separate entity, between 2012 and September 2019.  *See* Pl. App. 23-24; Def. App. 233, 245.  In any event, OTF's performance on its most recent agreement has been seriously deficient, which indicates that OTF is nonresponsible.  *See* FAR 9.104-3(b).

OTF's reliance upon the fact that USAGM has not yet taken the drastic step of terminating the FY 2020 grant agreement – which would require OTF to "forthwith return any portion of the Grant Funds in its possession or control to USAGM," Pl. App. 53-54 – is misplaced.  Pl. Resp. 6.  "A nonresponsibility determination may be based upon the contracting agency's reasonable perception of inadequate prior performance, even where the agency did not terminate the prior contract for default[.]"  *E.g.*, *MG Altus Apache Co. v. United States*, 111 Fed. Cl. 425, 449 (2013) (citation omitted).

OTF also erroneously suggests that a dismissal for lack of standing would be inappropriate because USAGM has not previously determined OTF to be nonresponsible. *See* Pl. Resp. 6.  On multiple occasions, the Federal Circuit has affirmed a finding by this Court that the plaintiff failed to demonstrate its responsibility for a contract, even where the agency had not determined the plaintiff nonresponsible for that contract.  *CliniComp*, 904 F.3d 1353; *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366 (Fed. Cir. 2002).  "In challenging an award *in court*, the burden rests on the protester to affirmatively demonstrate responsibility."  *Myers*, 275 F.3d at 1371 (emphasis added).  Because OTF has failed to demonstrate that it is a responsible source for the contract it seeks, it has failed to demonstrate prejudice, and count IV of its complaint should be dismissed for lack of standing.

**III.    OTF Has Not Made A Non-Frivolous Allegation That USAGM's Alleged In-sourcing Violated A Statute Or Regulation**

In our motion, we demonstrated that count IV of OTF's complaint should be dismissed for lack of jurisdiction or for failure to state a claim because: 1) OTF's alleged violations of the Economy Act (and a related statute and regulation) are meritless because the Economy Act is inapplicable to the alleged in-sourcing; and 2) OTF's allegations that the in-sourcing was irrational and based upon bad faith, untethered to any procurement statute or regulation, are not within this Court's jurisdiction.  Def. Mot. 34-38.  In its response, OTF does not address the latter issue, thereby conceding it.  *See, e.g.*, *CardSoft, (assignment for the Benefit of Creditors), LLC v. Verifone, Inc.*, 807 F.3d 1346, 1353 (Fed. Cir. 2015); *Philadelphia Auth. for Indus. Dev. v. United States*, 114 Fed. Cl. 519, 527-28 (2014).

Regarding the Economy Act, OTF continues to erroneously assert that USAGM violated 31 U.S.C. § 1535 and 22 U.S.C. § 6204(a)(16) by in-sourcing OTF's activities without making the findings required by 31 U.S.C. § 1535(a).  Pl. Resp. 6-10.  As we previously demonstrated, the primary flaw in OTF's argument is that 31 U.S.C. § 1535 and 22 U.S.C. 6204(a)(16) plainly provide USAGM with the *authority* to enter into Economy Act agreements; they do not require it to do so.  Def. Mot. 35-36.  If USAGM chooses to in-source through other means, *e.g.*, simply assigning its employees to do work previously performed by a contractor, then neither the Economy Act nor the "authorit[y]" in 22 U.S.C. § 6204(a)(16) are implicated.  Accordingly, it is not our position that USAGM can "opt out of the Economy Act's requirements[.]"  Pl. Resp. 7. Rather, because the Economy Act and 22 U.S.C. § 6204(a)(16) are authorities, the requirements of 31 U.S.C. § 1535(a) simply do not apply unless USAGM chooses to enter into an Economy Act agreement.

OTF incorrectly asserts that "taking funds away from an active procurement contract and giving it instead to a department of the agency . . . unlike a typical intra-agency reallocation, 'goes to the essence of the Economy Act.'"  Pl. Resp. 8 (quoting Government Accountability Office (GAO), *Principles of Federal Appropriations Law*, Third Ed., p. 12-27 (2008)).  What the GAO actually stated was that "the performing agency must be 'in a position to supply or equipped to render' the materials or services in question . . . *This requirement* goes to the essence of the Economy Act.  The objective of the statute is to permit an agency to take advantage of another agency's experience or expertise, not merely to 'dump' either work or funds or to avoid legislative restrictions."  *Principles of Federal Appropriations Law*, Third Ed., p. 12-27 (citation omitted) (emphasis added).  The GAO in no way suggested that "in-sourcing" "goes to the essence of the Economy Act."

Moreover, OTF fundamentally misunderstands appropriations law.  A proper understanding of appropriations law demonstrates why USAGM has no need to enter into Economy Act transactions to implement the alleged in-sourcing.  When Congress provides a particular appropriation to an agency, those funds are then apportioned to the agency by the White House Office of Management and Budget (OMB), and the agency may then allocate those funds within the apportionment.  *See* GAO, *Principles of Federal Appropriations Law*, Fourth Ed., p. 2-28 n.32 (2016) ("Congress appropriates, OMB apportions, and the receiving agency allots (or allocates) within the apportionment.").  USAGM's CEO has the "authorit[y]" to "allocate funds appropriated for international broadcasting activities among the various elements of [USAGM] and grantees," 22 U.S.C. § 6204(a)(6), and no further authority is generally necessary to "allocate" funds within an appropriation.  *See Lincoln v. Vigil*, 508 U.S. 182, 193

(1993) ("as long as the agency allocates funds from a lump-sum appropriation to meet permissible statutory objectives, [5 U.S.C.] § 701(a)(2) gives the courts no leave to intrude.").

In contrast, if an agency wants to "transfer" funds from an account funded by one appropriation to an account funded by a different appropriation (*e.g.*, to obtain goods or services from a different agency), then it needs a specific statutory authority to do so. *Principles of Federal Appropriations Law*, Fourth Ed., pp. 2-38, 2-44; *see also* 31 U.S.C. § 1532. "Transfer is the shifting of funds between appropriations." *Principles of Federal Appropriations Law*, Fourth Ed., p. 2-38. The Economy Act is one example of a transfer authority. *See id.* at pp. 2-40, 2-43. Indeed, 31 U.S.C. § 1535 is within a subchapter of Title 31 entitled "Transfers and Reimbursements," within the "Appropriation Accounting" chapter.

This distinction between a "transfer" and an "allocation" (which includes "reprogramming," *i.e.*, the "reallocation" of funds, 22 U.S.C. § 6204(a)(6)) explains why the GAO determined that intra-agency Economy Act agreements must be between organizations funded by separate appropriations. *See Principles of Federal Appropriations Law*, Third Ed., p. 12-33 n.24; *see also Principles of Federal Appropriations Law*, Fourth Ed., pp. 2-44 - 2-45 ("A transfer shifts budget authority from one appropriation to another. In contrast, a reprogramming shifts funds within a single appropriation."). As demonstrated in our motion, because all of the funds at issue were appropriated to USAGM as a whole, rather than different appropriations funding different organizations within USAGM, the Economy Act is not applicable. Def. Mot. 36. In any event, even if one component of an agency *could* enter into an Economy Act agreement to procure services from another component that is funded by the same appropriation, as OTF argues, Pl. Resp. 8, that would not *require* it to do so. Rather, the agency could simply allocate any funds necessary for the latter component to perform the services.

Additionally, OTF's argument that USAGM may "generally redistribute appropriated funds within the agency [under 22 U.S.C. § 6204(a)(6)] without making the Economy Act's required findings," but *must* make these findings when "it uses those funds for the specific purpose of procuring goods and services" finds no support in the text of the statute.  Pl. Resp. 10.  The plain language of 22 U.S.C. § 6204(a) demonstrates that subsections (a)(6) and (a)(16) are two separate "authorities" of the USAGM CEO.  Subsection (a)(6) expressly grants the CEO authority to "allocate funds appropriated for international broadcasting activities among the various elements of [USAGM] and grantees," and there is no reason to believe that the separate authority of subsection (a)(16) to "procure, pursuant to section 1535 of Title 31 . . ., such goods and services from other departments or agencies" circumscribes the CEO's authority under subsection (a)(6).

Even if the statutory grants of authority in 22 U.S.C. § 6204(a)(6) and (a)(16) overlap, that does not mean that one limits the other.  *Home Savings of Am. v. United States*, 399 F.3d 1341, 1357 (Fed. Cir. 2005) ("The statutory grants of authority—one general and one specific—overlap rather than conflict . . . The specific grant of authority in [12 U.S.C.] § 1729(f) does not implicitly limit [12 U.S.C.] § 1725(c)'s general grant of authority.  Accordingly, both can and should be given effect.").

OTF's heavy reliance upon *Halverson v Slater*, 129 F.3d 180 (D.C. Cir. 1997), is misplaced.  Pl. Resp. 7, 9-10.  In *Halverson*, the court rejected a party's construction of two statutes that would have rendered one of them essentially superfluous.  129 F.3d at 185.  Here, our interpretation of 22 U.S.C. § 6204(a)(6) and (a)(16) does not render subsection (a)(16) superfluous.  As demonstrated above, subsection (a)(16) allows the USAGM CEO to transfer funds to *different* appropriation accounts of "other departments or agencies," while

subsection (a)(6) does not.  There is no overlap between 22 U.S.C. § 6204(a)(6) and (a)(16)

because the Economy Act does not apply to the allocation of funds within a single appropriation

to an agency and, even if there were overlap, there is certainly no inconsistency between these

two authorities.[3]  Moreover, as demonstrated above, 31 U.S.C. § 1535 and 22 U.S.C. § 6204

grant *authority* to enter into Economy Act agreements, so USAGM cannot violate these

provisions by *not* entering into an Economy Act agreement.[4]

Because OTF's amended complaint does not allege that USAGM entered into an

Economy Act agreement, but instead makes the baseless argument that, "[b]efore it can in-source

the services that OTF performs under the agreement, USAGM must comply with the Economy

Act, 31 U.S.C. § 1535, and its implementing regulations, 48 C.F.R. § 17.502-2," Am. Compl. 28,

count IV of OTF's complaint should be dismissed for lack of jurisdiction (if the Court

determines that the Economy Act allegations are frivolous) or for failure to state a claim.[5]

---

[3]  If any party's argument renders a subsection of 22 U.S.C. § 6204(a) superfluous, it is
OTF's.  Because agencies generally function by "procuring goods and services" from their
components in the sense used by OTF (*i.e.*, having employees of those components perform
work or obtain goods and services in furtherance of the agency's mission), OTF's interpretation
would appear to apply the Economy Act to nearly all, if not all, circumstances where USAGM
allocates funds to a component, rendering 22 U.S.C. § 6204(a)(6) essentially superfluous.

[4]  It is also not clear that the CEO's authority under 22 U.S.C. § 6204(a)(16) to enter into
Economy Act agreements with "*other* departments or agencies" (emphasis added) encompasses
*intra-agency* agreements, even if the term "departments" is broader than the 15 Executive
departments identified in 5 U.S.C. § 101, as OTF argues.  Pl. Resp. 9.  Either way, for the
reasons stated above, 22 U.S.C. § 6204(a)(16) is inapplicable to the alleged in-sourcing.
Accordingly, the Court need not reach this issue.

[5]  In our motion, we demonstrated that FAR 17.502-2 does not apply to intra-agency
agreements.  Def. Mot. 37.  OTF did not address this in its response, thereby conceding the issue.
*See, e.g.*, *CardSoft,* 807 F.3d at 1353; *Philadelphia Auth.*, 114 Fed. Cl. at 527-28.

**IV.**   **Count IV Fails To State A Claim Because OTF Has Not Identified Any Statutory Violation, And Budgeting Decisions Regarding How To Allocate Limited Appropriations Are Otherwise Committed To Agency Discretion By Law**

In our motion, we demonstrated that because OTF's allegations that USAGM violated 22 U.S.C. § 6204(a)(16) and 31 U.S.C. § 1535(a) fail to state a claim, the rest of count IV should also be dismissed for failure to state a claim because, absent a statute circumscribing USAGM's discretion, its decisions regarding how to allocate its appropriations are unreviewable. Def. Mot. 38-39; *see also Lincoln*, 508 U.S. at 191-93. OTF did not address this issue in its response, thereby conceding it. *See, e.g.*, *CardSoft,* 807 F.3d at 1353; *Philadelphia Auth.*, 114 Fed. Cl. at 527-28.

**V.**   **Count IV Fails To State A Claim Because OTF Complains About USAGM Performing Inherently Governmental Functions For Which USAGM May Not Contract**

In our motion, we demonstrated that count IV also fails to state a claim because it challenges USAGM's in-house performance of the inherently governmental functions of awarding and administering Federal contracts. Def. Mot. 39-40. In response, OTF sets up a strawman by arguing that *it* is not performing inherently governmental functions under its grant agreement because "*OTF's* contracts are between the funding recipient and OTF—not between the recipient and USAGM." Pl. Resp. 10 (emphasis added).

Even if it is legal for a Federal agency to enter into a procurement contract requiring the prime contractor to award and administer contracts with subcontractors, which is a questionable proposition, *see Electra-Med Corp. v. United States*, 140 Fed. Cl. 94 (2018), *aff'd and remanded*, 791 F. App'x 179 (Fed. Cir. 2019), *Mythics, Inc.*, B-418785, 2020 CPD ¶ 295, 2020 WL 5425788, at *8-9 (Comp. Gen. 2020), that does not mean that OTF has raised a viable in-sourcing challenge. OTF does not dispute that it is objecting to *USAGM employees* performing

the inherently governmental function of awarding and administering Federal contracts. *See* Pl.

Resp. 10. OTF cannot plausibly argue that USAGM is illegally in-sourcing by having USAGM

employees perform inherently governmental functions. OTF has no right to perform the

functions that it objects to USAGM performing in its complaint. Accordingly, count IV of

OTF's complaint fails to state a claim upon which relief can be granted.

## <u>CONCLUSION</u>

For these reasons and the reasons stated in our motion to dismiss, we respectfully request

the Court dismiss count IV of OTF's complaint.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

OF COUNSEL:

s/ Franklin E. White, Jr.
Karen Mayo                           FRANKLIN E. WHITE, JR.
Maryellen Righi                      Assistant Director
Assistant General Counsels
USAGM                                s/ William P. Rayel
                                     WILLIAM P. RAYEL
                                     Senior Trial Counsel
                                     Commercial Litigation Branch
                                     Civil Division
                                     United States Department of Justice
                                     PO Box 480, Ben Franklin Station
                                     Washington, D.C. 20044
                                     Tel: (202) 616-0302
                                     Fax: (202) 307-0972
                                     E-mail: William.Rayel@usdoj.gov

Dated: October 29, 2020              Attorneys for Defendant